UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 21-cr-003 |
| VERSUS | JUDGE DONALD E. WALTER |
| DAVID RODGERS | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

David Rodgers ("Defendant") was a Deputy United States Marshal ("DUSM") in the Alexandria Division of the Western District of Louisiana. He has been charged with one count of identity theft, one count of making a false document, and one count of aggravated identity theft in connection with documents faxed from the U.S. Marshal's office in Alexandria. Before the court is Defendant's **Motion to Suppress (Doc. 35)**. Defendant argues that the seizure of the documents violated Defendant's Fourth Amendment rights. For the reasons that follow, it is recommended that the motion be denied.

**Relevant Facts**

The Georgia Department of Human Services ("DHS") placed a hold on Defendant's passport due to nonpayment of child support. On July 22, 2019, Defendant called Alshica Harper, an employee of DHS, to inquire as to how he could get the hold lifted. Ms. Harper told Defendant that there were three circumstances under which a hold could be lifted: (1) there was a death in the passport applicant's immediate family; (2) the applicant paid his

child support arrears in full; and (3) the lift is needed to facilitate foreign travel by the applicant on behalf of the applicant's employer to maintain employment. Defendant told Ms. Harper that he needed the passport hold lifted for employment purposes. Ms. Harper told Defendant that he needed to provide a letter from his employer on agency letterhead describing the need for the passport. The next day, Ms. Harper opened an email fax from Defendant. The fax included a letter from the military and other related employment documents. Ms. Harper forwarded the request to lift the hold to her supervisor, Amy Wilson. Eventually, the request to lift the hold on Defendant's passport was approved by DHS Supervisor Melissa McDowd. See Doc. 40-1.

The documents that Defendant faxed to Ms. Harper were attached to an official United States Marshal's Service fax cover sheet. At the top of the cover sheet were options to indicate whether the attached documents were "Top Secret," "Secret," or "Confidential." Defendant did not select any of these classifications. A disclaimer at the bottom of the cover sheet read: "<u>WARNING</u>: Information attached to this cover sheet is U.S. Government Property."

Attached to the cover sheet was a letter purportedly written and signed by Defendant's commanding officer in the Marine Corps, Lt. Col. David Morris. The letter explained that Defendant is a member of the U.S. Armed Forces and was serving on Active Duty. It stated that Defendant's duties "require extensive international travel in support of our nation" and that "a government issued passport is a dire requirement for all Marine Corps officers … ." Doc. 40-2, p. 5. Lt. Col. Morris gave a sworn statement in connection

with the investigation of Defendant. He testified that he did not write or sign the letter, and further, that Defendant's duties do not require an official passport. Doc. 40-4, pp. 3-4.

DUSM Glen Belgard shared an office with Defendant in Alexandria. The Alexandria office is an open, shared office space with a single all-in-one scanner/copier/fax machine used by all office employees. Upon arriving for work at the office sometime in late July 2019, Belgard noticed several documents on the shared office scanner/copier/fax machine. He saw Defendant's name on the documents and placed them on top of Defendant's desk, which was directly adjacent to Belgard's desk in the open, shared office space.

About one week later, Belgard contacted his supervisor, Supervisory DUSM Donnie Turner, and told him about the documents. Turner asked Belgard to send him all of the documents that Belgard had placed on Defendant's desk. Belgard went to Defendant's desk and saw the documents in the same location that Belgard had left them a week prior. Belgard then used the shared scanner/copier/fax machine to scan the documents and email them to Turner. Belgard then placed the documents back on Defendant's desk. Doc. 40-5.

**Analysis**

Defendant argues that he had a subjective expectation of privacy in the documents and that the Government conducted a warrantless search to retrieve the documents in violation of the Fourth Amendment. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Whren v. United States, 517 U.S. 806, 809 (1996).

A defendant seeking to suppress evidence under the Fourth Amendment must demonstrate that his individual rights were violated. United States v. Powell, 732 F.3d 361, 374 (5th Cir. 2013) (citing Rakas v. Illinois, 439 U.S. 128, 134 (1978)). The defendant must show that he had a legitimate expectation of privacy in the area searched. United States v. Ibarra, 948 F.2d 903, 905 (5th Cir. 1991). The defendant bears the burden of establishing standing. United States v. Hernandez, 647 F.3d 216, 219 (5th Cir. 2011).

In determining whether a defendant has a reasonable expectation of privacy sufficient to contest the validity of a search, the court inquires "(1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and (2) whether that expectation of privacy is one which society would recognize as reasonable." United States v. Finley, 477 F.3d 250, 258-59 (5th Cir. 2007) (citations omitted). Relevant factors include:

> whether the defendant has a [property or] possessory interest in the thing seized or the place searched, whether he has a right to exclude others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy[,] and whether he was legitimately on the premises.

Id. "When testing common, or public, areas—those areas to which the public and others, such as law enforcement officers, have access—courts generally hold that a party possesses no reasonable expectation of privacy and that the Fourth Amendment is thus not implicated." United States v. Ramirez, 145 Fed. Appx. 915, 923 (5th Cir. 2005).

Defendant cannot show that he had a reasonable expectation of privacy in documents he faxed to a third party and then left on a shared fax machine in a common

office area.¹  The uncontroverted evidence shows that the documents were found on a shared fax machine and then put on top of Defendant's desk, which was located in an open office space where other Deputy U.S. Marshals worked.  Defendant did not have a right to exclude others from the space.  He did not have a private office, locking door, or partition separating his desk from the common area.  Therefore, Defendant had no subjective expectation of privacy with respect to the place that was searched.

Once Defendant left the documents, which were not marked as secret or confidential, on the shared machine, they were no longer in his possession.  DUSM Belgard retrieved the documents from the fax machine and placed them on Defendant's desk, but Defendant never re-took possession of the documents.  Significantly, Defendant attached the documents to an official U.S. Marshal's Service fax cover sheet, which contained a "**WARNING**" that information attached to the cover sheet is "U.S. Government property." Defendant did not check the box on the cover sheet to mark the attachments as "Confidential."  Defendant took no precautions to maintain privacy as to the documents.

Furthermore, a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.  Smith v. Maryland, 442 U.S. 735, 743 (1079); United States v. Gratkowski, 964 F.3d 307, 310 (5th Cir. 2020); United States v. Conteras, 905 F.3d 853, 857 (5th Cir. 853); United States v. Bitcoins, 2021 WL 4307375 (W.D. Tex.

---

¹ Defendant argues that the documents in question were kept in a personal folder located in his desk drawer.  This is the only disputed fact in this motion.  However, Defendant offers no evidence or affidavit to support this conclusory statement.  Therefore, Defendant is not entitled to a hearing on this motion.  United States v. Harrelson, 705 F.2d 733, 737 (5th Cir. 1983); United States v. Thompson, 540 Fed.Appx. 445, 447 (5th Cir. 2013).

2021). This is true even when the information is revealed on the assumption that the information will be used only for a limited purpose. Conteras, supra. Based on a review of the relevant factors, the undersigned finds that Defendant has not established that he had a subjective expectation of privacy with respect to the documents.

The Government argues that independent source doctrine also applies. The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation. Nix v. Williams, 467 U.S. 431, 443 (1984). The doctrine applies to evidence obtained for the first time during an independent lawful search as well as evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality. Murray v. United States, 487 U.S. 533, 537 (1988).

Defendant transmitted the documents to Georgia DHS by fax. At the point, Georgia DHS took possession of a copy of the documents. Georgia DHS emailed the documents to the Government. But the Government does not explain why Georgia DHS sent the documents to the Government. Did the Government ask for the documents? If so, the only reason the Government would have known to ask for the documents was based on DUSM Belgard's initial discovery of the documents. In light of this unanswered question, the undersigned cannot say that the independent source doctrine applies. However, the undersigned finds that the application of the independent source doctrine to these facts is not necessary because there was no Fourth Amendment violation.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 35) be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of September, 2021.

Mark L. Hornsby
U.S. Magistrate Judge